CARTER *v.* KANSAS CITY CABLE RY. CO.

*(Circuit Court, W. D. Missouri, W. D.    March, 1890.)*

1. CARRIERS OF PASSENGERS—PRESUMPTION OF NEGLIGENCE.
   The injury of a passenger raises a presumption that the carrier was negligent.
2. SAME—EVIDENCE—SUBSEQUENT PRECAUTIONS.
   Evidence that after the injury a skilled mechanic connected with defendant's road devised a patent to prevent similar accidents is immaterial, unless by reasonable diligence defendant could have discovered the new device before the injury.
3. SAME—DEFECTIVE APPLIANCES.
   If defendant, a cable-car company, procured the best grip it knew of, after due investigation, and subjected it to the best tests known, and thoroughly examined all the machinery of its cars each night by competent men, it is not liable for an injury occasioned by the breaking of the shank of the grip from some latent defect, causing the car to run rapidly down hill and collide with another car, it having diligently applied all known brakes to hold the car on the hill.

At Law.
*Jettmore & Son*, for plaintiff.
*Johnson & Lucas*, for defendant.

PHILIPS, J., *(orally charging jury.)*    This is an action for personal injuries alleged to have been sustained by plaintiff while a passenger on defendant's cable-car at Kansas City. The plaintiff took passage on the car at the Union depot station to come up into the city. From that point to the summit of the hill there is a steep incline of several hundred feet in length. Just as the car reached the summit of the incline it suddenly stopped, and then began to run backward, to the foot of the incline, with great velocity, where it collided with another of defendant's cars. The plaintiff received by this collision injuries to one of his ankles and hands.

The defendant contends that the accident was from inevitable casualty, without any inculpatory act on its part; that the retrograde movement of the car was occasioned by sudden breaking of one of the shafts of the grip; and that, owing to the slippery condition of the rails from frost, and snow, the downward movement of the car could not be stayed·by the brakes.

There are certain general principles of law applicable to this case to be kept in mind by you for your guidance. The defendant, in contemplation of law, is a common carrier of passengers for hire. As such, it undertook, in consideration of the fare paid by plaintiff, to safely carry him over its road to his point of destination. It did not undertake, however, to insure the life and limbs of such passenger. But as the public has an interest in the lives and limbs and health of its citizens, no less than the individual himself, the law exacts of a carrier of passengers a high degree of caution and vigilance to prevent accidents, and. consequent injury. So, when the passenger is injured in the progress of the trip, the law presumes that the carrier has been guilty of negligence. In other words, when the plaintiff proves, as has been done in this case, that he took passage on defendant's train of cars, paid his fare, and received an injury, he has made out a *prima facie* case, and the burden of proof then shifts to the defendant to explain the circumstances of the injury. If it appears from its evidence that the injury was not attributable to the neglect of any duty which the law imposes upon it, then the *prima facie* case of the plaintiff is counterbalanced, and the jury, without more, should find for the defendant. The law requires that such carrier of passengers should exercise the highest degree of care. Care, diligence, and negligence are more or less relative terms. They cannot always be defined arbitrarily, applicable indifferently to every state of facts. They cannot always be determined abstractly. Care and negligence must necessarily be judged of by the nature of the work to be done, the instruments to be used, the hazard and danger to life and limb from the character of the service to be performed by the carrier. "Ordinary care" means simply that caution and vigilance which a reasonable and prudent person should exercise under like circumstances. So the term "utmost care," which it is said the carrier of passengers must exercise to prevent injury to his passenger, must often be considered relatively, in the sense above indicated.

You must look to the pleadings to see what are the issues of fact you are to try, for those are the only matters you are called here to determine. The allegations of this petition are that, in carrying plaintiff up said incline, "the said defendant, by its agents and employes, suffered and permitted said car in which plaintiff was being so carried, when at the summit of said incline, to become detached and precipitated with great velocity and violence down said incline many hundred feet, and to violently collide with and crash into another car of defendant, then standing on said railway; thereby, and in consequence thereof, plaintiff was greatly frightened, bruised, injured," etc.; the simple meaning of which is that, after the car had made its ascent of the hill, and had reached a

point near its summit, the defendant was guilty of some act of commission or omission by which the car ran backward instead of going forward. This is the question you are to try.

The defendant has undertaken, by evidence, to show that it had employed in the construction of its cars the best appliances known to the business, and the best machinery attainable. If you find from the evidence that defendant, in the construction and equipment of its track and cars for operation, had exercised the highest degree of care and circumspection known to it; that it had employed, as its evidence tends to show, the best material which it could ascertain by inquiry and experiment to be needful for such use; that it had employed the best brakes, grips, and appliances for running, stopping, and operating such cars, at such a point; and had exercised great care and caution in inspecting and testing such appliances, in a mechanical and skillful manner,—then there would remain another question in the case, and that is, did the defendant also exercise due care in the selection of competent servants to run the car, and put them in charge thereof, on this occasion? If it did that, there remains but one other fact for you to find, in this connection, and that is, did the servants on this occasion exercise care and put forth their best efforts to prevent this accident? If you should find these facts for defendant, the plaintiff has no case, and your verdict should be for the defendant.

Gentlemen of the jury, there has been some evidence, forced upon your attention before the court could control it, to the effect that, a few months after this accident, some one of the skilled mechanics or engineers connected with this road devised a patent or plan by which it is supposed such an accident as the one in question could not occur, or could be prevented. In respect of this, I charge you that such subsequent discovery would not necessarily make the defendant liable in this action. It devolves upon the plaintiff to go further with his proof, and show that such new device was known to the defendant prior to this accident, or that its discovery could have been made by the exercise of diligence on its part, as heretofore defined. A jury in the box should always exercise its common sense, and be controlled by reason, experience, and observation. You know, without any witness telling you, that new inventions and new devices in applied mechanics are being discovered; that new principles are being developed, or old principles are constantly being rearranged, combined, and applied, to produce new results in the use of machinery, to improve forces in propelling cars, both by steam and cable, and to secure greater safety in their operation. The fact, therefore, that after an injury occurs some man of genius, by the exercise of his gifts and experience, or by experiments, discovers some superior method for the prevention of accidents, and its application to this road might have prevented the accident in question, ought not to make the defendant liable for not applying a thing not in existence at the time, and not known to it.

The law tries to be reasonable and just. It only exacts of the defendant in this case that degree of care, vigilance, and effort which pru-

· dent and sensible men should exercise under like circumstances; that is, the best exercise of its talents and skill and exertion, with the lights then before it, or reasonably accessible to it.   The evidence in this case shows that the operation of railroads by an endless cable in this country is of comparatively recent experience.   The first was operated in San Francisco; next, in the city of Chicago, and contemporaneously in the city of New York and the defendant city; and all within a few years past. The method is of comparatively recent discovery or application.   Therefore it is not in a state of perfection.   Men of science and mechanical education are yet experimenting on the subject of the best and safest methods of their operation.   All the law requires is that the defendant should use the best machinery and methods known to or attainable by it to secure success and safety.

If, therefore, gentlemen, you are satisfied from the evidence that the defendant, in operating this road, obtained and used the best appliances known to and obtainable by it; that it bought or procured the best grip it knew of, after inquiry and investigation, and subjected it to reasonable tests to discover its strength and fitness,—then it had done all the law demands in that respect.   The evidence shows that defendant, through its officers and agents had taken every reasonable precaution, in the choice and selection of grips and brakes, that men of experience and skill in such matters could suggest and devise.   Defendant had brought from San Francisco, where cable roads were first built and run, and over inclines quite as abrupt as the one in controversy, Mr. Lawless, a mechanic and civil engineer, who had operated roads in California, and defendant had the assistance of his experience and judgment in selecting its grips and brakes, and after careful examination into like machinery in Chicago and New York.   If you find such to be the fact,—and there is nothing in evidence to contradict it,—then it had done all in that particular the law demands.

The evidence tends to show, without contradiction, that, before defendant used the grip in question, it subjected it to the best known methods for determining its strength and soundness; that the force applied in making such test exerted a power or tension far greater than was necessary to accomplish its work on the road.   It had been in use on this road successfully for quite a time.   The evidence further shows that it was the rule of the company that the grips, brakes, and every part of the machinery of the cars should be thoroughly examined each night after the cars were run into the round-house; that the car-inspectors were men of experience and competency;   and that they did each night so go over the cars, and make minute examination of the grips, the brakes, etc., to discover any defect or misplacement; and that they never allowed a car to go out in the morning without repair.   If you believe these men, that is all the law requires to complete defendant's defense in this respect.   If, therefore, you find from the evidence that the breaking of the shank of the grip, as testified to by the witnesses, occurred from some latent, hidden defect, not apparent to the eye, and not discoverable after the examinations and tests, by striking it with the hammer,

as testified to by the inspector, the defendant would not be liable in this action for an accident resulting from such hidden and undiscovered defect. The shaft may have had an internal defect or flaw undiscoverable by reasonable tests, and which suddenly developed under unforeseen circumstances of pressure or exposure. If the accident in question resulted from that, the defendant ought to have a verdict.

There is no contradiction in the evidence that this car, with said grip, had been on the road for some time. It had been running all that day, making its customary round of trips, which were frequent. It had successfully ascended and descended that incline the day long. If you believe from the evidence that the shank broke suddenly, then, as has been demonstrated before you by the presence of the grip in court, the inevitable defect of such breakage was to detach the grip from the cable, and, in obedience to the law of gravitation, the car must go to the bottom of the incline, unless it could have been otherwise checked. And this brings before you another matter: When the grip did break, the law comes in, and says it became the duty of the servants in charge of said train to put forth every effort possible on their part to save the passengers harmless, by stopping the car by every other appliances therefor at their command. The evidence shows that the car was provided with every known brake to stay it on the hill-side; and that the gripman, the extra hill-brakeman, and the conductor seem to have done their whole duty in this particular; but, on account of the slippery condition of the track, the car slided, notwithstanding the application of the brakes. The gripman showed his fidelity to duty, as he stood at his brake until his leg was broken in the collision.

Now, gentlemen of the jury, you are the sole judges of the weight of evidence and the credibility of the witnesses. There are certain legal methods of discrediting witnesses, either by showing that they are of bad character, that their reputation for truth among their neighbors is bad, by showing that they have made contradictory statements about something that is material, or by contradicting them with the weight of testimony, or from the internal improbability of the truth of their statements. There has been no impeachment, in any essential, of any of the witnesses in this case. So you should find that the shank was broken, unless you can find that the three witnesses have committed perjury on this trial. The plaintiff is a citizen of the state of Kansas, and the defendant is a citizen of this state. Justice, in the universality of its spirit, recognizes no state lines. The plaintiff has the same standing— the same right—in this court as if he were in his home court. You are to regard the person of no man; but, as the representative of justice itself, you are to be blind to all such matters of locality. On the other hand, the defendant is a corporation. I trust it is not necessary that I should remind this jury that a defendant corporation is entitled to the same respect and consideration in court as an individual litigant. In short, gentlemen, you are to try this case under the solemnity of your oaths, on the law and the evidence, and not otherwise. If you believe from the whole evidence that the defendant was not guilty, on the occasion in

question, of the imputed negligence, you ought to find the issues for it. If you are able from this evidence to find that the injury is attributable to the negligence of defendant, the verdict should be for the plaintiff. Should you find for the plaintiff, in assessing his damages you may take into consideration his physical pain, and mental anguish, if any, resulting from such pain and injury; his loss of time, medicines, and medical bills for attendance of physician. This is not a case for punitive damages,—that is, exemplary damages,—but you will allow only compensatory damages,—such as, under all the facts and circumstances in evidence, seem to you to be reasonable and just, not exceeding the sum of $10,000 sued for.